J-S29002-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.H., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 431 WDA 2022 |

Appeal from the Order Entered March 17, 2022
In the Court of Common Pleas of Allegheny County
Orphans' Court at No(s): CP-02-AP-0000130-2021

| | | |
|---|---|---|
| IN THE INTEREST OF: M.H. | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: T.H., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 432 WDA 2022 |

Appeal from the Order Entered March 17, 2022
In the Court of Common Pleas of Allegheny County
Family Court at No(s): CP-02-AP-0000131-2021

BEFORE:   PANELLA, P.J., MURRAY, J., and COLINS, J.[*]

MEMORANDUM BY PANELLA, P.J.:                **FILED: October 7, 2022**

T.H. ("Father") appeals from the orders granting the petitions filed by the Allegheny County Office of Children, Youth and Families ("CYS"), and involuntarily terminating his parental rights to two of his minor children, D.H., a male born in January 2018, and M.H., a female born in September 2019,

---

[*] Retired Senior Judge assigned to the Superior Court.

(collectively "the Children"), pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), (8), and (b).[1] Father contends that CYS did not prove by clear and convincing evidence his incapacity to parent the Children, and termination was not in the Children's best interests. We affirm.

Father has nine children with four different mothers, including three children with Mother.[2] Notably, none of Father's other children are in his care, and he has never been the primary caregiver or lived with any of his children beyond the age of four. Furthermore, Father has been arrested more than 20 times for various charges, including possessing firearms and delivering drugs.

Relevant herein, Mother and Father resided together with D.H. In July 2019, following an argument, Mother and Father departed the home and left D.H., who was 1½ years old, alone. Father later called the police to inform them that D.H. was alone in their home. The police took D.H. to the hospital, after which an emergency custody authorization was obtained. Subsequently, D.H. was placed in his current kinship pre-adoptive home with his maternal great-aunt and great-uncle. CYS then filed a dependency petition as to D.H. At the hearing, Father acknowledged that he had problems with intimate partner violence, for which he had pending criminal charges, used marijuana

---

[1] The trial court also terminated the parental rights of the Children's mother, J.E.B. ("Mother"), and she has not appealed the termination of her rights.

[2] Mother and Father's third child, who is not part of this appeal, is currently in the care of a welfare agency in South Carolina.

and opiates, and drank alcohol heavily three times per week. Mother confirmed the presence of violence in their relationship. The trial court adjudicated D.H. dependent, and further ordered Father to engage in family teaming, undergo a drug and alcohol evaluation, attend domestic violence classes, resolve his criminal charges, and participate in supervised visits with D.H.

In September 2019, M.H. was born to Mother and Father. CYS obtained an emergency custody authorization due to her parents' ongoing issues. During the subsequent shelter hearing, the court noted that Father was in prison. Thereafter, CYS filed a dependency petition, and the trial court adjudicated M.H. dependent and placed her in a kinship foster home that is pre-adoptive.

Father was released from prison on November 22, 2019. The trial court ordered Father to allow CYS to assess his home; engage in domestic violence services; engage in drug and alcohol treatment; provide drug screens; and attend supervised visits at the CYS office. Further, CYS convened family plan meetings, to establish goals for Father to reunify with the Children.

Father initially participated in substance abuse treatment, but his participation ceased in 2020, after he obtained a medical marijuana card. Nevertheless, Father continued to use both medical and illicit marijuana daily. Further, although Father completed a domestic violence intervention program, CYS maintained concerns of partner violence and Mother's and Father's

volatile relationship. Father also completed a parenting program, but CYS noted that Father did not show parenting capacity at his supervised visits despite his programming and continued to display anger-management problems. Notably, Father only participated in supervised visits and never proceeded to unsupervised visits.

As a result, on July 21, 2021, CYS filed a petition to involuntarily terminate the parental rights of Mother and Father. The trial court heard testimony from, *inter alia*, a psychologist, Dr. Eric Bernstein; CYS caseworker, Angela Tyner; and Father. After the hearing, the court terminated Father's parental rights, finding that CYS proved by clear and convincing evidence that grounds for termination existed pursuant to Section 2511(a)(2), (5), and (8), and that terminating Father's parental rights served the needs and welfare of the Children pursuant to Section 2511(b).[3] Father timely appealed and filed Pa.R.A.P. 1925(b) concise statements.[4]

On appeal, Father raises the following questions for our review:

1. Did the trial court abuse its discretion and/or err as a matter of law in granting the petition to involuntarily terminate Father's parental rights pursuant to 23 Pa.C.S.[A.] § 2511(a)(2), (5), and (8)?

2. Did the trial court abuse its discretion and/or err as a matter of law in concluding that CYF met its burden of proving by clear and convincing evidence that termination of Father's parental

---

[3] The trial court also entered separate orders changing the goal to adoption. However, Father does not raise any issues related to these orders.

[4] This Court, acting *sua sponte*, consolidated these appeals for review.

rights would best serve the needs and welfare of the children pursuant to 23 Pa.C.S.[A.] § 2511(b)?

Father's Brief at 8.

We review an appeal from the termination of parental rights with significant deference to the trial court's verdict:

> In an appeal from an order terminating parental rights, our scope of review is comprehensive:  we consider all the evidence presented as well as the trial court's factual findings and legal conclusions. However, our standard of review is narrow:  we will reverse the trial court's order only if we conclude that the trial court abused its discretion, made an error of law, or lacked competent evidence to support its findings. The trial judge's decision is entitled to the same deference as a jury verdict.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

Termination of parental rights is controlled by section 2511 of the Adoption Act. *See* 23 Pa.C.S.A. § 2511. The burden is upon CYS to prove by clear and convincing evidence that its asserted grounds for seeking the termination of parental rights are valid. *See In re D.A.T.*, 91 A.3d 197, 203 (Pa. Super. 2014). "Clear and convincing evidence is that which is so clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue." *Interest of A.M.*, 256 A.3d 1263, 1270 (Pa. Super. 2021) (citation and quotation marks omitted). Further, the trial court is free to believe all, part, or none of the evidence presented and is likewise free to make all credibility determinations and resolve conflicts in the evidence. *See In re D.A.T.*, 91 A.3d at 203. "If competent evidence supports the trial court's findings, we will

affirm even if the record could also support the opposite result." ***In re M.M.***, 106 A.3d 114, 117 (Pa. Super. 2014) (citation omitted).

Satisfaction of any one subsection of section 2511(a), along with consideration of section 2511(b), is sufficient for the involuntary termination of parental rights. ***See Interest of S.S.***, 252 A.3d 681, 686 (Pa. Super. 2021). In this case, we will review the trial court's decision to terminate Father's parental rights based upon sections 2511(a)(2) and (b), which state the following:

> **(a) General rule.--**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> * * *
>
> (2) The repeated and continued incapacity, abuse, neglect or refusal of the parent has caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being and the conditions and causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied by the parent.
>
> * * *
>
> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S.A. § 2511(a)(2), (b).

To satisfy the requirements of section 2511(a)(2), the moving party must produce clear and convincing evidence regarding the following elements: (1) repeated and continued incapacity, abuse, neglect or refusal; (2) such incapacity, abuse, neglect or refusal caused the child to be without essential parental care, control or subsistence necessary for his physical or mental well-being; and (3) the causes of the incapacity, abuse, neglect or refusal cannot or will not be remedied. *See In re Adoption of S.P.*, 47 A.3d 817, 827 (Pa. 2012). "The grounds for termination of parental rights under Section 2511(a)(2), due to parental incapacity that cannot be remedied, are not limited to affirmative misconduct; those grounds may also include acts of refusal as well as incapacity to perform parental duties." *In re K.Z.S.*, 946 A.2d 753, 758 (Pa. Super. 2008) (citation omitted).

Father contends that the trial court erred in granting the petition to involuntarily terminate his parental rights under Section 2511(a)(2). *See* Father's Brief at 17. Father argues that CYS failed to establish that he will not and cannot remedy the conditions that caused the Children to be without parental care. *See id.* at 19. Father asserts that the trial court improperly focused on his marijuana use, parenting capabilities, history of domestic violence, and criminal history, and did not properly consider that he did not have any recent incidents of domestic violence or criminal convictions. *See id.* at 19-20.

In turn, Father highlights that he has housing and two jobs. *See id.* at 20. Additionally, Father claims that the trial court's reliance on the fact he has never raised a child without assistance or past the age of four inappropriately created a presumption of incapacity. *See id.* at 21. Father further contends that the use of marijuana cannot alone support a finding that he was unable to care for the Children, and CYS was required to establish a nexus between his marijuana usage and incapacity to care for the Children. *See id.* at 21-22. Moreover, Father notes that he could not obtain treatment for his marijuana use after he received his medical marijuana card. *See id.* at 21.

The trial court acknowledged Father's progress in turning his life around, but nevertheless found that there was no evidence Father was improving his capabilities to be a proper parent to his children:

> In the present case, it is true that Father is doing better than he ever has in the past in terms of remaining free of criminal difficulties and that Father is functioning in terms of maintaining work and housing. However, that does not mean he has come close to demonstrating parenting capacity. … [T]here is no concrete evidence to bear out Father's ability to create a nurturing and safe life for these two young children. Father's parenting program taught him better ways to interact at visits, and yet he was not affectionate and remained curt and even abrasive with them without any apparent awareness of his demeanor; in fact, he testified he is a good father. He attended some [intimate partner violence] programing and then proceeded to slash someone's tires in anger. Father does not show understanding of his need for [intimate partner violence] improvement because he generally blames his violence on others, in this case on Mother for her use of illegal substances. Father testified to undergoing drug and alcohol counseling in jail and as part of another program and then claimed he learned that the use of alcohol diminishes his control of his temper. However, whether he has stopped using alcohol is not clear, but he clearly abuses marijuana, which is his

- 8 -

method of controlling his moods and emotions and his means of relaxation. Father views marijuana use as a minor matter, but testimony indicated that he, even with his parental rights at sake, he would not comply with this goal by staying within the confines of medical usage.

Moreover, Father has never parented children on his own, and he has no meaningful support system even if he could demonstrate parenting capacity, which he has not. In short, Father made progress, but it was slow and gradual. His progress offered no meaningful basis to conclude he could reach reasonable parenting capacity at any point in the future, much less within any reasonable period of time (beyond the reasonable time which he was already given). Because the evidence showed that Father was not able to demonstrate parenting capacity and was not able to remedy this condition over the course of 30 months, this Court found that termination of his right was justified under [Section 23 Pa.C.S.A. § 2511(a)(2)].

Trial Court Opinion, 5/27/22, at 16-17; **see also** N.T., 3/16/22, at 292-96.

The record supports the trial court's conclusion that termination of Father's parental rights is appropriate pursuant to subsection 2511(a)(2). Although Father did make progress during the case, including resolving his goals to avoid committing crimes and maintaining housing, he is unable to establish his parenting capacity for the Children. To that end, Father continued to use both legal and illicit marijuana daily to manage his behavior. **See** N.T., 3/16/22, at 31, 33-35, 58-59, 62, 103, 123-26, 158, 167, 204, 206-07. Dr. Bernstein recommended treatment due to Father's dependence on marijuana, but Father never properly engaged in treatment. **See id.** at 51, 59-61; **see also id.** at 125-26, 168, 205-06. Furthermore, while Father completed an anger-management program, he continued to have violent interactions with Mother and blamed Mother for his behavior; Father minimized the domestic

violence; and CYS was concerned about the relationship between Mother and Father. ***See id.*** at 25-26, 39, 57, 63-64, 103, 116-17, 131-32, 134, 155-57, 173-74. Likewise, Father completed a parenting program, but did not demonstrate skills to permit unsupervised visits. ***See id.*** at 94-95, 129-30, 137. Additionally, Father does not show physical affection with the Children. ***See id.*** at 46-48.

In light of the foregoing, the trial court did not err in finding that Father is incapable of caring for the Children, and that he cannot or will not remedy his parental incapacity. Indeed, "a child's life cannot be held in abeyance while a parent attempts to attain the maturity necessary to assume parenting responsibilities. The court cannot and will not subordinate indefinitely a child's need for permanence and stability to a parent's claims of progress and hope for the future." ***In re Adoption of R.J.S.***, 901 A.2d 502, 513 (Pa. Super. 2006). Therefore, we affirm the portion of the trial court's orders terminating Father's parental rights pursuant to Section 2511(a)(2). ***See In re Z.P.***, 994 A.2d 1108, 1124-26 (Pa. Super. 2010) (finding that although father had moderately complied with the permanency plan, his overall parenting history revealed he had no genuine capacity to perform his parental responsibilities, and therefore the evidence was sufficient to terminate his rights under Section 2511(a)(2)).

Having determined termination is appropriate pursuant to Section 2511(a)(2), we next review whether the requirements of Section 2511(b) are

satisfied. ***See In re C.L.G.***, 956 A.2d 999, 1009 (Pa. Super. 2008) (*en banc*). Under section 2511(b), the trial court inquires whether the termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. ***See In re C.M.S.***, 884 A.2d 1284, 1286 (Pa. Super. 2005). "Intangibles such as love, comfort, security, and stability are involved in the inquiry into the needs and welfare of the child." ***Id.*** at 1287 (citation omitted). The court must also discern the nature and status of the parent-child bond, with utmost attention to the effect on the child of permanently severing that bond. ***See Interest of L.W.***, 267 A.3d 517, 523 (Pa. Super. 2021); ***see also In re Z.P.***, 994 A.2d at 1121 (stating that "the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship."). "[C]ourts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents." ***In re T.S.M.***, 71 A.3d 251, 268 (Pa. 2013) (citation omitted). In conducting a bonding analysis, the court is not required to use expert testimony, but may rely on the testimony of social workers and caseworkers. ***See Interest of L.W.***, 267 A.3d at 523. Finally, although the focus in terminating parental rights under section 2511(a) is on the parent, it is on the child under section 2511(b). ***See In re C.L.G.***, 956 A.2d at 1008.

Father contends the trial court erred in finding CYS presented clear and convincing evidence that involuntary termination of his parental rights would

best meet the developmental, physical, and emotional needs and welfare of the Children. **See** Father's Brief at 22, 23. Father argues that Dr. Bernstein's observations regarding his behavior toward the Children, including shaming the Children for calling their foster mother "mom," did not happen and the trial court should not have relied on these statements. **See id.** at 23-24. Father concludes that the Children love him and deserve to have the benefits of their relationships with him preserved. **See id.** at 24.

Here, credible evidence established that the Children are in kinship pre-adoptive homes and have primarily been raised by these foster families, they view their foster parents as their parents, and their needs are met in their foster homes. **See** N.T., 3/16/22, at 52-53, 83-86, 90-91; **see also** Bernstein Report, 2/15-22/22 at 2 ("Both sets of foster parents presented as stable, healthy adult figures committed to the welfare of the respective children in their care."). Further, the Children are well-bonded with their foster parents. **See** N.T., 3/16/22, at 137-38; **see also id.** at 44, 138-39 (stating that the Children refer to their foster parents as mommy and daddy). Moreover, the Children showed stable and healthy bonds with these families, whereas Dr. Bernstein and CYS Caseworker Tyner found any bond to Father to be quite limited and that terminating Father's rights would best serve the Children's needs and welfare. **See id.** at 47-48, 50, 51-52, 129-30. Importantly, Dr. Bernstein and Tyner also testified that the Children would not suffer severe or long-lasting adverse consequences from terminating Father's parental rights.

*See id.* at 51-52, 139; *see also* Bernstein Report, 2/15-22/22, at 6 (stating that terminating Father's parental rights "will not likely deleteriously impact the children, beyond the short term, and more than likely, will be compensated for by the consistent show of support and care offered by the foster parents."). Dr. Bernstein further highlighted that removing the Children from their current homes would place "them in a vulnerable position and potentially at risk for psychological trauma." Bernstein Report, 2/15-22/22, at 5.

The trial court determined that termination of Father's parental rights best served the Children's needs and welfare, explaining that the credible evidence established that Father had only a limited bond with the Children, and that the Children are in loving and stable pre-adoptive homes where their needs are being met, and that the Children deserve to be able to rely on this stability. *See* Trial Court Opinion, 5/27/22, at 17. As the record supports the trial court's conclusion that involuntary termination of Father's parental rights best serves the needs and welfare of the Children, we affirm the trial court's termination of Father's parental rights pursuant to Section 2511(b).

For the foregoing reasons, we affirm the trial court's orders terminating Father's parental rights.

Orders affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  10/7/2022